

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIENNA BEEF, LTD., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 11 C 3825 |
| RED HOT CHICAGO, INC. and SCOTT D. LADANY, | ) Judge Sharon Johnson Coleman ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on plaintiff Vienna Beef's Motion for a Temporary Restraining Order. At oral argument on June 16, 2011, Vienna Beef stated it is seeking an order: (1) prohibiting defendant Red Hot Chicago ("RHC") from encouraging vendors to deceive customers by asking them to sell RHC hot dogs while displaying Vienna Beef signs;[1] (2) prohibiting RHC from using the Vienna name in its promotional and marketing material; (3) prohibiting RHC from using Vienna Beef recipes or claiming that their recipes are century old, date back to 1893, or that they are "Sam Ladany's recipes" or the Ladany family recipes; and (4) prohibiting RHC from directly or indirectly implying an affiliation with or continuation of Vienna Beef. After considering the submissions of the parties and their oral arguments, the motion is denied for the reasons that follow.

## Background

Vienna Beef was founded as the Vienna Sausage Manufacturing Company after Austro-Hungarian immigrants Emil Reichel and Samuel Ladany sold sausages made from their family recipe at the 1893 Columbian Exposition in Chicago. Vienna Beef claims to have used the same sausage

---

[1] Vienna Beef has since withdraw those claims and the supporting declarations.

recipes for the last 118 years. Vienna Beef asserts that its recipes are trade secrets that it has taken great effort to divulge to the fewest number of people possible. Defendant Scott Ladany is the grandson of Vienna Beef founder Samuel Ladany. Scott Ladany began working for the company in 1971 and obtained a 10% stock interest. The Ladany family sold the company in the early 1980s to plaintiff Vienna Beef. In 1983, Ladany left Vienna Beef and sold all of his stock. When Ladany left Vienna Beef, he signed a non-compete agreement that also contained a confidentiality clause with regards to Vienna Beef's trade secret recipes. In 1986, at the end of the non-compete term Ladany started Red Hot Chicago to make hotdogs and other sausages. Scott Ladany's son, Bill, joined RHC in 2003.

Vienna Beef filed the instant lawsuit claiming that advertising and promotional material disseminated by RHC contains several of Vienna Beef's trademarked phrases and numerous references to RHC using family recipes and making references to the Ladany family's history of sausage making. In its complaint, Vienna Beef is seeking injunctive relief and damages for federal trademark infringement, false advertising, unfair competition, and Illinois statutory and common law causes of action.

## Temporary Restraining Order

Vienna Beef filed the instant motion requesting a TRO and asserting the following:
1) Vienna Beef's history as a 118 year old company that uses "family recipes" is part of its brand, which it has spent millions of dollars developing and marketing with references to the 1893 Columbian Exposition and well-known photographic and illustrated images depicting Vienna Beef's "Chicago-style hot dog."
2) The Vienna Beef recipes are trade secrets, which Scott Ladany acknowledged in written contracts that he can never use or divulge. Vienna Beef has made every effort to maintain the confidentiality of its recipes and production techniques. Vienna Beef alleges that Red Hot Chicago has misappropriated

trade secrets by declaring that it uses 118 year old family recipes to make its sausages. The claim by Red Hot Chicago is either a misappropriation of a trade secrets or it is false advertising, according to Vienna Beef.

3) Vienna Beef has federally registered trademarks for several phrases, which Red Hot Chicago is using, including "MAKE ME ONE WITH EVERYTHING" and "DRAG IT THROUGH THE GARDEN".

4) Red Hot Chicago is engaging in unfair competition by trading on Vienna Beef's goodwill associated with the company history, name and product line.

In opposition to the TRO, Red Hot Chicago asserts that it has been continuously emphasizing Scott Ladany's family history in the Chicago hot dog industry in its marketing materials for 25 years, including the slogan "A Family Tradition Since 1893." RHC also asserts that it has been using the Ladany family history and images of a classic "Chicago-Style" hot dog beginning with an advertising campaign eight years ago. The only new marketing material is a two-page spread in the May 2011 issue of *Food Industry News* to commemorate RHC's 25th anniversary, which it has no plans to repeat. RHC argues that Vienna Beef cannot show irreparable injury if the TRO is not issued since RHC has been using the complained-of advertising for many years and thus no emergency exists warranting a TRO.

## Legal Standard

To obtain a temporary restraining order pursuant to Fed. R. Civ. P. 65, Vienna Beef must first demonstrate: (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) an irreparable injury if the TRO is not issued. Ty Inc. v. Jones Group, 237 F.3d 891, 895 (7th Cir. 2001). If Vienna Beef (the moving party) can satisfy these conditions, the court must then consider any irreparable harm an injunction would cause Red Hot Chicago (the non-moving party). Id. Following those considerations, the court then must consider any consequences to the public from

3

denying or granting the injunction. Id. Finally, the court weighs all these factors using a sliding-scale approach. Abbot Labs v. Mead Johnson & Co., 971 F. 2d 6, 12 (7th Cir. 1992). Under the Seventh Circuit's sliding-scale approach, the less likely the movant's chance of success on the merits, the more the balance of harms must weigh in the movant's favor. Id.

**1. Likelihood of Success on the Merits**

For each of its claims, Vienna Beef asserts that it is likely to succeed on the merits. At oral argument, it focused its argument on the false advertising claims.

<u>False Advertising and Unfair Competition</u>

To prevail on a false advertising claim under 15 USC § 1125(a)(1), a plaintiff must show that the defendant "(1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, (3) on a subject material to the decision to purchase the goods, (4) touting goods entering interstate commerce, and (5) that results in actual or probable injury to the plaintiff." B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F. 3d 967, 971 (7th Cir. 1999). False statements under the Lanham Act fall into two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that are literally true or ambiguous, but convey a false impression or mislead in context. Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999). When a statement is shown to be false, a plaintiff is not required to prove that the statement actually deceived anyone or was likely to do so. Id.

RHC conceded at argument that a brochure stated in error that RHC uses a "century old family recipe." RHC argues, however, that Vienna Beef can show no irreparable harm necessitating a TRO because that brochure has been in use for eight years.

Vienna Beef claims that the statements at issue are literally false and therefore it is not required to show evidence of consumer confusion. However, its oral argument belies that assertion, as Vienna Beef emphatically argued that the statements needed to be taken in context and that they

4

conveyed a false impression. Moreover, it is undisputed that Scott Ladany's grandfather was Samuel Ladany, one of the founders of the Vienna Sausage Manufacturing Company, and that Sam Ladany sold hot dogs at the 1893 World's Fair, and that members of the Ladany family have been in the hot dog business for 118 years. Accordingly, Vienna Beef has not shown that statements of that kind are false. In fact, those statements are literally true. Thus, Vienna Beef is asserting false-in-context claims that require it to show evidence of consumer confusion, which it has not done. Vienna Beef therefore has not shown a likelihood of success on the merits of its false advertising claim.

Trademark Infringement

Vienna Beef claims RHC uses two of its trademarked phrases *verbatim* in its advertising and promotional material: "Make me one with everything," and "Drag it through the garden." A trademark infringement claim under 15 USC §1125(a), requires plaintiff to establish that (1) the trademarks used in commerce are protectable, and (2) that defendant's use of the trademarks is likely to cause confusion among consumers. See Promatek Indust. Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002).

Vienna Beef has attached copies of its federal registration of three phrases as trademarks. Federal registration is prima facie evidence of the validity of the trademarks. Id. To assess the likelihood of confusion, courts consider the following factors: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintff." Ty Inc., 237 F.3d at 897-98.

Here, the phrases are used in a descriptive manner as a customer ordering their hot dog with particular toppings and condiments. Despite being trademarked, phrases may be used descriptively and "otherwise than as a mark" without violating the Lanham Act. See 15 U.S.C. §1115(b)(4);

Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1058 (7th Cir. 1995)(affirming denial of preliminary injunction where use of the term "sweet-tart" to describe its cranberry juice was used "otherwise than as a mark" despite SweeTarts candy having a protectable trademark, though it might have a claim if there was evidence of consumer confusion). Vienna Beef has shown no evidence of customer confusion. Moreover, there is no connection between RHC's use of the phrases and Vienna Beef products as opposed to hot dogs generally. The phrases are part of full-page ads and do not convey an attempt by RHC to palm-off its hot dogs as Vienna Beef products. Thus, the likelihood of success on the merits as to this claim is low.

Illinois Trade Secret Act

To state a claim under ITSA, plaintiff must allege that the subject information was (a) a trade secret, (b) misappropriated, and (c) used in the defendant's business. Learning Curve Toys, Inc. v. Playwood Toys, Inc., 342 F. 3d 714, 721 (7th Cir. 2003).

Vienna Beef asserts that it has gone to great lengths to maintain secrecy, including having different contractors make different components of the recipe (spice blends and oils) so that no one contractor knows the entire recipe. Ladany acknowledged in the two written agreements that the recipes and production techniques are secrets never to be divulged or used. At oral argument, Vienna Beef emphasized the false advertising component of its claim that RHC is using Vienna Beef's trade secret recipes. Vienna Beef bases its claim for trade secret misappropriation on RHC's advertising material. Ladany has submitted an affidavit unequivocally stating that RHC does not use the Vienna Beef recipe developed by his grandfather and that in 1986 he worked with Heller Seasonings & Ingredients to develop RHC's recipe, which it has used in substantially similar form for 25 years. For the purposes of the TRO, it does not appear that the trade secret claim is really at issue. Nevertheless, Vienna Beef has shown no evidence that the recipes were used in RHC's business and therefore cannot show that it is likely to succeed on the merits of this claim.

6

Common Law State Claims

Vienna Beef's remaining state common law claims rest on the same factual and legal foundation as its Lanham Act claims. See, e.g., Rust Env't & Infrastructure v. Teunissen, 131 F.3d 1210, 1219 (7th Cir. 1997); World Impressions Inc. v. McDonald's Corp., 235 F. Supp. 2d 831, 841 (N.D. Ill. 2002). Since this Court finds that Vienna Beef has not made the requisite showing of probability of success on the merits with its Lanham Act claim, neither can it show it is likely to succeed on the merits of its common law claims.

### 2. Irreparable Harm and Inadequate Remedy at Law

Vienna Beef fails to show how it will be irreparably harmed by waiting for an adjudication on the merits. In asserting that it will be irreparably harmed if this Court does not grant a TRO, Vienna Beef relies on presumptions of harm and inadequate remedy at law, rather than demonstrate how it will be harmed. Although harm may be presumed in some instances, those presumptions are rebuttable by a showing that the movant will not suffer any harm if the injunction is not granted. See, e.g., Computer Associates Intern. v. Quest Software Inc., 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004). RHC contends that it has used all but one of the statements at issue for several years. It claims that the slogan, "A Family Tradition Since 1893" has been in continuous use for 25 years. Even though Vienna Beef stated that this slogan is not at issue in the TRO, this Court recognizes the similarity and relatedness between that slogan and many of the images and statements referring to the 1893 World's Fair and the 118 year history that are at issue in this motion. RHC also asserts that it has used the phrases "Make me one with everything," and "Drag it through the garden," for eight years.

It appears to this Court that with the exception of one new advertisement appearing in the May 2011 issue of *Food Industry News*, the complained of advertising has been in use for years and thus this Court fails to see the emergency necessitating a TRO. Vienna Beef fails to show how it will be irreparably harmed by waiting for an adjudication on the merits.

### 3. Balance of harms and the public interest

Although Vienna Beef fails to satisfy the first three factors to support a TRO, this Court will briefly address the balance of harms. Vienna Beef contends that Red Hot Chicago would not be harmed if the Court were to enter a limited and temporary restraining order, especially on those issues that RHC claims to not be engaging in anyway. This Court disagrees. The balance of harms clearly weighs against entering a TRO where Vienna Beef has not shown that an emergency exists and that it will be harmed without such drastic action and RHC would be in the position of altering much of its advertising and promotional material if this Court granted a TRO. Indeed, if this Court were to enter a TRO it would in fact alter the status quo rather than maintain it to prevent harm to the parties.

In terms of protecting the public interest, Vienna Beef asserts that a TRO is necessary to prevent customer confusion. It has shown no evidence of any customer confusion to support that assertion. This Court finds that a TRO would not be in the public interest since it would curtail commercial competition when Vienna Beef has not carried its burden to show that such an order is necessary to prevent harm.

For the foregoing reasons, Vienna Beef's motion for temporary restraining order is denied without prejudice.

IT IS SO ORDERED.

Date: June 21, 2011.

Entered: _____
Sharon Johnson Coleman